UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|       Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:03 CR 71 |
| | ) | |
| MICHAEL BAJZA, *et al.*, | ) | |
|       Defendants | ) | |

## MEMORANDUM OPINION

This matter is before the court on defendant Dr. Michael Bajza's "Notice of Breach of Plea Agreement,"[1] filed January 10, 2006 ("Defendant's Notice"), along with the United States' ("the government") response thereto, and defendant's reply. In the notice, defendant Bajza advises the court that he believes that the government—because of acts committed by the Indiana Attorney General—has breached its plea agreement with him, and requests the court to hold a hearing to determine whether that is the case.[2] In the event the court determines that the agreement has been breached, Bajza requests relief in the form of one of three alternatives: 1) an order requiring specific performance of the plea agreement, that is, ordering withdrawal of a state administrative complaint filed against him; 2) an order allowing him to withdraw his

---

[1] The motion's caption is plural: "Defendants' Notice of Breach of Plea Agreement." It is clear from the motion's text, however, that it pertains only to defendant Michael Bajza. For example, the first sentence in the motion states: "Comes now the defendant, Dr. Michael Bajza, . . . and provides notice to this Court that defendant believes the government to be in breach of its agreement with the defendant."

[2] Neither party has identified any factual disputes that need to be explored at a hearing, and the current record is more than adequate to decide the issues raised. Accordingly, the request for a hearing is **DENIED**.

guilty plea; or 3) an order dismissing the second superseding indictment (filed February 16, 2005).

Defendant Bajza's claim that the government has breached his plea agreement arises from the following circumstances. Bajza was charged with conspiring to defraud the Indiana Medicaid program and with various offenses relating to the execution of the fraud scheme involved. On the third day of his jury trial, a Friday, the parties notified the court that they believed they had reached an agreement pursuant to which Bajza would plead guilty to one count of health care fraud. On Monday, the court conducted a change of plea hearing, and, after reviewing the terms of the plea agreement with Bajza, the following exchange occurred:

> The Court: So is that it, then? There's no more agreements between and you [sic] the government? What we have talked about —
> Defendant Bajza: Correct.
> The Court: — is in total what your agreement with the government is unless, there's something else that I'm missing?
> Defendant Bajza: No.
> The Court: That's it, right?
> Defendant Bajza: Yes.
> Defense Counsel: Your Honor, there is one other thing that's not mentioned in the plea agreement, as far as our agreement. And that is that the -- the Medicaid and Fraud Control Unit in the State of Indiana has agreed that as it pertains to the defendant's dental license, that they will make no recommendation one way or another to the dental licensing board.
>     That is not in the agreement, but that's separate and apart. And we have a written document indicating that. We just want to make sure that that's part of the record.
> The Court: That's also part of your agreement with the government, correct?
> Defendant Bajza: Yes.

Defense counsel made a slight mistake. The agreement was with the Indiana Attorney General ("IAG"),[3] as reflected in the written document mentioned, attached as ex. D to Defendant's Notice, which is a letter to defendant Bajza from Sheila O'Bryan McGrath, Director and Chief Counsel, Consumer Protection Division, Licensing, Office of the Indiana Attorney General. The letter states: "The Office of the Attorney General agrees to take no position with respect to sanction in any disciplinary action that it may take against the dentist license of Michael Bajza/The Smile Center." The letter is dated October 17, 2005, the same day as the change of plea hearing.

On December 5, 2005, the IAG filed an administrative complaint against defendant Bajza with the Indiana State Board of Dentistry, containing six counts premised on the conduct described in the indictment in this case. Each count states that Bajza's conduct "is cause for disciplinary sanctions" and that those sanctions may include, singly or in combination with other sanctions, suspension or revocation of license. The complaint concludes with a prayer for relief that "demands" an order imposing "the appropriate disciplinary sanction."

It is this complaint that precipitated Defendant's Notice to the court that "the government" has breached the plea agreement. The very next day after Bajza filed that Notice, the IAG filed an amended administrative complaint, identical to the first except that the prayer for relief was changed. The change eliminated the demand for a disciplinary sanction, instead stating that the IAG "requests that the Board take any

---

[3] The Medicaid and Fraud Control Unit is a department with office of the IAG.

action it may deem appropriate, if any. Petitioner makes no recommendation to the Board regarding the imposition of sanctions."

In response to this state of affairs the government argues that, as defense counsel stated at the plea hearing, the agreement with the IAG is "separate and apart" from its plea agreement with Bajza, so there is no breach; that no matter what the IAG may have agreed to or done, the United States was not a party to the IAG's agreement and has not breached any promise it made to Bajza, and; that even if there was a breach, that breach was remedied by the amended administrative complaint in which the IAG "makes no recommendation" regarding the imposition of sanctions.

Bajza's response is that the United States is responsible for the IAG's conduct, making the IAG's promise part of the plea agreement: during the pendency of the criminal case the IAG claimed to be a "party representative" of the United States, and during plea negotiations, the Assistant United States Attorneys involved stated that the IAG would, as part of the agreement, make no recommendation concerning Bajza's dental license, and never advised that they had no authority to make that representation. Further, Bajza argues that the filing of the administrative complaint was itself a breach of the plea agreement (at the time that the plea was negotiated, only consumer complaints were pending against Bajza). Bajza continues that the amended complaint does not remedy the harm already done, and instead the complaint must be entirely withdrawn; and, in any event, the amended complaint is no better than the first,

4

as it still recommends the imposition of sanctions against him including suspension or revocation of his license.

The parties' focus on whether the IAG's promise was, or was not, part of the plea agreement, is an issue that the court need not spend energy resolving. Even though the written plea agreement contains an integration clause[4] (a fact neither party has mentioned), the Court of Appeals has recognized that despite such a provision, "there may be circumstances that merit an inquiry into whether oral promises may have induced a plea, thereby rendering it involuntary." *United States v. Cieslowski*, 410 F.3d 353, 361 (7th Cir. 2005).

In this case no inquiry beyond the record is necessary, as it provides a clear answer. In its response to Defendant's Notice, the United States admits that "Bajza conditioned his entering into the instant plea agreement on obtaining an agreement with the IAG relating to Bajza's dental license." Reply at 4. Moreover, at his plea hearing, the court specifically asked Bajza whether the IAG's promise was "part of [his] agreement with the government," to which Bajza answered yes. The government's failure at that time to correct the record, and explain as it attempts to now, that any breach of that promise by the IAG would not affect the validity of Bajza's plea, speaks volumes. *Cf. United States v. Logan*, 244 F.3d 553, 558 (7th Cir. 2001) (rejecting

---

[4] The court is compelled to point out that defense counsels' assertion in the reply brief that the government drafted the document and that they were not given "the time nor ability to make changes" is an excuse that is not at all persuasive. In the future, the court expects defense counsel—and the government—to ensure that the written plea agreement accurately reflects the terms of the actual agreement inducing the plea.

defendant's claim that plea was conditioned on government's promise not to prosecute family members where "the consensus between the prosecutor, defense counsel, and Logan, at the change of plea hearing demonstrates that no outside agreements or inducements influenced the plea agreement. All parties agreed at the plea hearing that the plea agreement and the cooperation agreement constituted the entire agreement.")

It is true that *Santobello* refers to a promise made by the prosecutor to induce the plea, and the government here argues that it did not make the promise, the IAG did, absolving the United States of any consequences from the IAG's conduct. Courts have recognized, however, that where the federal government involves itself in the state process, promises made by the state can be binding in federal court. For example, a federal sentencing court can ignore a promise made by the state that any federal sentence will run concurrently with the state sentence, unless the federal government was involved with the state plea bargaining process. *See Meagher v. Clark*, 943 F.2d 1277, 1281 (11th Cir. 1991); *Pinaud v. James*, 851 F.2d 27, 31 (2d Cir. 1988); *Saulsbury v. United States*, 591 F.2d 1028, 1035 (5th Cir. 1979), *cert. denied*, 444 U.S. 857 (1979). The circumstances here, including the government's failure at the plea hearing to correct Bajza's, or the court's, understanding that the IAG's promise was part of the plea agreement, are enough to show the government's involvement in the IAG's promise, and that Bajza could not have understood that his decision to plead guilty was based on a promise made by the IAG that the United States believed need not be fulfilled. Thus, whether or not the IAG's promise was part of the agreement between Bajza and the

6

government, the only conclusion that can be drawn from the present circumstances is that, if the IAG has breached the promise "to take no position with respect to sanction in any disciplinary action that it may take against the dentist license of Michael Bajza," then an important condition to Bajza's plea has not been fulfilled, rendering that plea involuntary. *Santobello v. New York*, 404 U.S. 257, 262 (1971).

The question that remains is whether the IAG breached its promise. The court does not agree with Bajza that, simply by filing the administrative complaint, the IAG committed a breach. The IAG promised "to take no position with respect to sanction in *any disciplinary action that it may take* against the dentist license of Michael Bajza/The Smile Center." (Emphasis added.) Thus, the written promise itself contemplated that additional disciplinary action might be taken in the future, beyond the consumer complaints already pending against Bajza when the promise was made. The court has no doubt, however, that the IAG has breached its promise, even were the court to disregard the initial complaint and consider only the allegations of the amended administrative complaint.

To say that in the amended administrative complaint the IAG "take[s] no position with respect to sanction" would be to elevate form over substance. While the prayer for relief recites that the IAG "makes no recommendation . . . regarding the imposition of sanctions," the allegations of the complaint reiterate six times that Bajza has violated Indiana laws and regulations applying to his profession, constituting

7

"cause for disciplinary sanctions . . . such as . . . suspension, or a revocation of license." This is the opposite of "no position" on sanctions. The IAG is in breach of its promise.

This conclusion leaves one remaining question: what is the appropriate remedy? It is not, as Bajza requests, an order requiring the IAG to withdraw the administrative complaint. Putting aside jurisdictional questions, and Indiana's important interest in regulating and licensing its health care professions,[5] neither of which issues Bajza has addressed, the fact remains that the IAG's written promise clearly contemplated the possibility of future disciplinary action. Thus, the court will not order the IAG to withdraw the administrative complaint.

Neither is dismissal of the indictment an appropriate remedy. Bajza has cited no authority in support of that remedy, and the court has found no cases in this circuit suggesting that to be true. While the court has not exhausted all research avenues, the only cases easily found indicate this remedy might be appropriate where the promise breached was one not to prosecute the defendant. *See, e.g.*, *United States v. Cahill*, 920 F.2d 421, 425-26 (7th Cir. 1990). In general, however, dismissal of an indictment is an extreme remedy, and because of society's interests in the administration of criminal justice, should be resorted to only in the most severe cases of prosecutorial misconduct where a defendant's ability to provide a defense to the criminal charges has been prejudiced. *See United States v. Morrison*, 449 U.S. 361, 365 (1981); *United States v. Van Engel*, 15 F.3d 623, 631-32 (7th Cir. 1993). Bajza has not suggested that the Assistant

---

[5] "That the regulation and licensing of healthcare professionals is an important matter of state concern is beyond dispute." *Majors v. Engelbrecht*, 149 F.3d 709, 713 (7th Cir. 1998).

8

United States Attorneys in this case procured his plea knowing that the IAG was making a false promise, or that they had any role in the IAG's decision to file the administrative complaint, and neither does he argue that his ability to defend the criminal charges in the present case has been prejudiced. As a result, the court will not dismiss the indictment.

The only remedy that is appropriate in the present case is to allow Bajza the opportunity to withdraw his plea. Bajza can inform the court of his decision at the currently-scheduled sentencing hearing. If he chooses not to do so, sentencing can proceed as scheduled. If he does elect to withdraw his plea, the court will give the parties the earliest available trial setting, as there is no reason to think that double jeopardy bars Bajza's continued prosecution. *See United States v. Podde*, 105 F.3d 813, 816 n. 2 (2d Cir. 1997);[6] *Fransaw v. Lynaugh,* 810 F.2d 518, 528 (5th Cir. 1987); *cf. United States v. Dinitz*, 424 U.S. 600 (1976).[7]

ENTER: February 21, 2006

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT

---

[6] "Unlike the situation in which the trial has ended in an acquittal or conviction, retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused. Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." *Id.*

[7] As to the double jeopardy issue, it should also be noted that at the plea hearing Bajza's counsel tried to convince the court to withhold acceptance of Bajza's plea until all licensing issues could be resolved, stating: "We are willing to indicate that we are waiving our right to the attachment of jeopardy."